UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAHER ALBARQAWI,<br><br>          Plaintiff,<br><br>- against -<br><br>7-ELEVEN, INC.,<br><br>          Defendant. | (Electronically Filed)<br><br>12-cv-03506<br><br>**ANSWER AND<br>COUNTERCLAIMS**<br><br>JURY TRIAL DEMANDED |

Defendant, 7-Eleven Inc. ("7-Eleven"), by its undersigned attorneys, for its answer to the complaint, states as follows:

1. Admitted upon information and belief.

2. Denied. 7-Eleven does not maintain a place of business at 2711 Easton Road, Willow Grove, Pennsylvania.

3. Admitted.

4. Admitted.

5. Denied.

6. Denied.

7. Denied, except it is admitted, upon information supplied to 7-Eleven by Plaintiff, that Plaintiff visited the store numerous times.

8. It is admitted that Plaintiff signed the Franchise Agreement on August 22, 2008. The remainder of the allegations of this paragraph are denied.

9. Denied.

10. Denied. 7-Eleven is without knowledge of information sufficient to form a belief as to the allegations of this paragraph and they are therefore denied.

11. Denied. 7-Eleven is without knowledge of information sufficient to form a belief as to the allegations of this paragraph and they are therefore denied.

12. Denied. 7-Eleven is without knowledge of information sufficient to form a belief as to the allegations of this paragraph and they are therefore denied.

13. Denied.

14. Denied.

15. Denied. 7-Eleven is without knowledge of information sufficient to form a belief as to Plaintiff's purported disagreement with his employee over wages and these allegations are therefore denied.

16. Denied. 7-Eleven performed audits and visits to Plaintiff's store as authorized by the parties' agreement. Plaintiff's characterization of the reasons or motives therefor is denied, along with any suggestion by Plaintiff that the audits and visits were improper.

17. Admitted, except 7-Eleven denies that its grounds for termination—failure to maintain the required minimum net worth and a lack of cleanliness—were untrue.

18. It is admitted that after 7-Eleven terminated the Franchise Agreement, Plaintiff was not entitled to a return of the franchise fee, and no longer had the right to sell any goodwill to another prospective franchisee.

19. Denied. 7-Eleven is without knowledge of information sufficient to form a belief as to the allegations of this paragraph and they are therefore denied.

## COUNT I

20. 7-Eleven hereby incorporates its responses to paragraphs 1-19, above.

21. Denied.

22. Denied.

23. Denied. The allegations contained in this paragraph constitute legal conclusions to which no response is required. To the extent a response is deemed required, the allegations are denied.

## COUNT II

24. 7-Eleven hereby incorporates its responses to paragraphs 1-23, above.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

## COUNT III

29. 7-Eleven hereby incorporates its responses to paragraphs 1-28, above.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

## COUNT IV

35. 7-Eleven hereby incorporates its responses to paragraphs 1-34, above.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

## COUNT V

41. 7-Eleven hereby incorporates its responses to paragraphs 1-40, above.

42. Denied.

43. Denied.

44. Denied.

## FIRST AFFIRMITIVE DEFENSE

45. Plaintiff has failed to state a claim upon which relief may be granted.

## SECOND AFFIRMITIVE DEFENSE

46. Plaintiffs' claims are barred by the statute of limitations.

## FIRST COUNTERCLAIM (Breach of Contract/Action for Debt)

47. The Court has jurisdiction of the matters alleged in this complaint under the provisions of Fed.R.Civ.P. 13 and of 28 U.S.C. § 1332 because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000 and is between citizens of different states.

48. Venue is proper in this district under the provisions of U.S.C. § 1391(a).

49. Counterclaim Defendant, Baher Albarqawi ("Albarqawi") entered into the franchise agreement ("Franchise Agreement") for the store located at South 58th Street, Philadelphia, Pennsylvania (the "Store") on August 22, 2008.

50. Albarqawi took over operation of the Store on October 8, 2008.

51. Pursuant to the Franchise Agreement, 7-Eleven leased or subleased to Albarqawi certain equipment and real property located at 1337 S. 58th Street, Philadelphia, Pennsylvania (the "Premises").

52. Under the Franchise Agreement, Albarqawi was required to maintain a minimum "Net Worth," which is essentially defined in the Franchise Agreement as all of the "assets" (such as the cash register fund, the cost value of the inventory, store supplies, receivables, and prepaids), less the franchisee's payables and secured obligations from the operation of the store (such as accrued salaries and withholding taxes payable), including any indebtedness to 7-Eleven in the "Open Account."

53. Albarqawi was permitted to take a weekly draw so long as he was not in breach of the Franchise Agreement and the draw did not cause the Net Worth to fall below the minimum required under the Franchise Agreement.

54. The minimum Net Worth provides 7-Eleven with a financial safety net with respect to each franchised 7-ELEVEN store. Inasmuch as 7-Eleven builds or leases the store premises, purchases equipment, delivers a fully operational convenience store to a franchisee from the outset of the franchise relationship, and provides ongoing financing to the franchisee for inventory purchases and other operating expenses, the minimum Net Worth requirement assures that all 7-Eleven franchisees are vested in the operation of their 7-ELEVEN stores and further serves as a monetary cushion for both the franchisee and 7-Eleven should a franchisee's store experience financial difficulty.

55. Under the Franchise Agreement, Albarqawi was required to maintain a minimum Net Worth of not less than fifteen thousand ($15,000.00) dollars.

56. Under the Franchise Agreement, Albarqawi was required to maintain the Store "in a clean, attractive, orderly, safe, and sanitary condition and in good repair and operating condition."

57. Under the Franchise Agreement, a failure to comply with the 7-ELEVEN "Cleanliness Evaluation" was a Material Breach (as therein defined), which "constituted good cause for termination" subject to a right to cure upon three (3) Business Days' notice (as also defined therein).

58. Under the Franchise Agreement, a failure to maintain the minimum Net Worth was a Material Breach, which "constituted good cause for termination" subject to a right to cure upon three (3) Business Days' notice (as also defined therein).

59. Notwithstanding the right to cure a Material Breach within three Business Days, the Franchise Agreement further provided that if Albarqawi had previously been served with three (3) separate Notices of Material Breach within the two (2) years prior to the occurrence of a fourth Material Breach, Albarqawi no longer had the right to cure a subsequent Material Breach in such 2-year period.

60. Prior to the issuance of the Notice of Material Breach and Termination on or about April 18, 2011, Albarqawi had committed at least six (6) Material Breaches within the prior two years (Net Worth and customer experience—cleanliness), for which 7-Eleven had given notice to Albarqawi. These notices included the following:

(a) April 1, 2011 (customer experience-- cleanliness);

(b) March 17, 2011 (net worth);

(c) March 3, 2011 (net worth); and

(d) November 22, 2010 (net worth).

61. Albarqawi materially breached the Franchise Agreement and failed substantially to comply with his aforesaid obligations under the Franchise Agreement.

62. Albarqawi also admitted to failing to deposit his store receipts for at least April 14 and 15, 2011.

63. The final audit of Albarqawi's operation of the Store showed that Albarqawi's "Open Account" was $104,997.34 in the negative. Thus, Albarqawi owes 7-Eleven at least this sum.

64. Upon information and belief, according to a complaint Albarqawi's former employee, Rochdi Mayna, filed with the Equal Employment Opportunity Commission ("EEOC Complaint") on June 6, 2011, Albarqawi engaged in numerous, substantial acts of fraud in operating the Store, including:

(a) listing people on payroll who did not work at the Store and reporting their phantom wages as costs to Albarqawi, thereby reducing the Store's Gross Profit and 7-Eleven's income derived therefrom, as well as reducing the net income of the franchised operation, in violation of state and federal law;

(b) inflating the number of hours and associated labor costs for employees who actually did work at the Store;

(c) maintaining a separate drawer from the cash register and requiring employees to skim money from 7-Eleven and the government to benefit Albarqawi;

(d) deliberately failing to report all purchases and sales; and,

(e) threatening Albarqawi's employees to prevent them from reporting such activity to 7-Eleven.

65. 7-Eleven did not know, prior to receiving a copy of Rochdi Mayna's complaint to the EEOC, that Albarqawi had engaged in such fraudulent activity.

66. 7-Eleven has duly performed all of the obligations on its part to be performed under the Franchise Agreement.

67. Albarqawi's actions constitute a breach of his contractual and fiduciary duties to 7-Eleven.

68. As a result of the Albarqawi's breaches, 7-Eleven has suffered damages in an amount not yet determined but estimated to be not less than $104,997.34.

WHEREFORE, 7-Eleven demands that judgment be entered in its favor, and against Albarqawi, awarding 7-Eleven compensatory damages of not less than $104,997.34, the costs of this suit and reasonable attorneys' fees, and such other and further relief as the Court may deem just and equitable.

## SECOND COUNTERCLAIM (Fraud)

69. Paragraphs 47 through 68, inclusive, are hereby incorporated by reference.

70. By engaging in the acts described in paragraph 64, above, Albarqawi committed fraud against 7-Eleven.

71. Albarqawi deliberately misrepresented his sales and cost, with an intent to deceive 7-Eleven and deprive 7-Eleven of its share of the Store's profits.

72. Albarqawi knew that 7-Eleven would rely on his representations concerning the Store's revenue and the cost of goods sold.

73. 7-Eleven reasonably relied on Albarqawi's representations, to its detriment.

74. Albarqawi's actions were willful and wanton, warranting the imposition of punitive damages.

75. As a result of Albarqawi's fraudulent conduct, 7-Eleven has been harmed in an amount as yet to be determined.

WHEREFORE, 7-Eleven demands that a judgment be entered in its favor, and against Albarqawi, awarding 7-Eleven compensatory and punitive damages, the costs of this suit and reasonable attorneys' fees, and such other and further relief as the Court may deem just and equitable.

Dated: Lancaster, PA
June 27, 2012

Respectfully submitted,

LEBENSFELD BORKER SUSSMAN & SHARON LLP

By:  /s/ Susan V. Metcalfe
Susan V. Metcalfe
140 Broad Street
Red Bank, NJ 07701
Tel: (732) 530-4600
Fax (732) 530-4334
susan.metcalfe@lbands.com

OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
J. Kurt Straub
Ryan L. Leonard
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19103-1895
Telephone: (215) 665-3000
j.kurt.straub@obermayer.com

*Attorneys for Defendant 7-Eleven, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2012, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        **ZARWIN BAUM DEVITO KAPLAN SCHAER & TODDAY P.C.**
        David F. McComb
        1818 Market Street, 13th Floor
        Philadelphia, PA 19103
        dfmccomb@zarwin.com

        *Attorneys for Plaintiff*

        **LEBENSFELD BORKER SUSSMAN & SHARON LLP**

        By: /s/ Susan V. Metcalfe
            Susan V. Metcalfe (PA 85703)
        131 Centerville Road
        Lancaster, PA 17603
        Telephone: (717)230-1900
        susan.metcalfe@lbands.com

        *Attorneys for Defendant 7-Eleven, Inc.*

Date: June 27, 2012