IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BAHER ALBARQAWI              :     CIVIL ACTION
                             :
         v.                  :
                             :
7-ELEVEN, Inc.               :     NO. 12-3506

MEMORANDUM

McLaughlin, J.                                February 13, 2014

   This case arises from a franchise agreement between the plaintiff, Baher Al-Barqawi ("Al-Barqawi"), and the defendant, 7-Eleven, Inc. ("7-Eleven"), for a 7-Eleven franchise located in Southwest Philadelphia.  Al-Barqawi entered into a franchise agreement with 7-Eleven in August 2008.  In doing so, Al-Barqawi relied on statements made by 7-Eleven representatives indicating that the 7-Eleven store he was franchising did not have any problems with crime.  During the first week that Al-Barqawi operated the store, he discovered that the store had been subject to frequent criminal activity.  Nonetheless, Al-Barqawi operated the store for more than two years.

   In 2011, after 7-Eleven terminated Al-Barqawi's franchise for violations of the franchise agreement, Al-Barqawi brought this suit.  Al-Barqawi brings claims for breach of contract, negligent and intentional misrepresentation, rescission, and promissory estoppel.  Before the Court is the

defendant's motion for partial summary judgment.  7-Eleven argues that it is entitled to summary judgment on the plaintiff's promissory estoppel, rescission, and negligent and intentional misrepresentation claims.  The Court agrees and will grant summary judgment for the defendant.  This case will move forward on the plaintiff's breach of contract claim.

II.  Factual Record[1]

In January 2008, the plaintiff, Baher Al-Barqawi, sought to become a franchisee of 7-Eleven.  Al-Barqawi's initial application was rejected.  On June 12, 2008, a 7-Eleven Franchise Sales Manager contacted Al-Barqawi about a newly available franchise opportunity located in Southwest Philadelphia at 1337 S. 58th Street (the "Store").  Al-Barqawi and his wife were unfamiliar with the location.  They visited the Store and asked 7-Eleven representatives about the neighborhood.  They were told that the neighborhood and Store were safe and that there was no problem with crime.  The only

---

[1] The plaintiff's response briefs do not contain a recitation of facts or otherwise respond to the defendant's statement of facts.  The plaintiff does not argue that any of the facts relied upon by the defendant are in dispute. Rather, the facts that are material to this motion, most of which are taken from the plaintiff's complaint, are supported by evidence submitted by the plaintiff.

2

issue with crime reported by 7-Eleven was one incident with a robber who had since been killed. Al-Barqawi submitted a franchise application and was approved. He signed a franchise agreement on August 22, 2008. Compl. ¶¶ 5-8; Decl. of Baher Al-Barqawi ¶¶ 2-5; Def.'s Mot. for Summary Judgment, Exh. C1, Franchise Agreement.

Al-Barqawi began operating the Store on October 8, 2008. On Al-Barqawi's first day as franchisee, $50,000 worth of money orders was stolen by employees of the former franchisee of the Store. Two days later, Al-Barqawi was robbed at gunpoint in the Store. A day or two after that, a police officer who was visiting the Store informed Al-Barqawi that the Store had been robbed several times, and that the former franchisee kept a baseball bat under the counter to chase away potential robbers and shoplifters. Compl. ¶¶ 10-11; Answer ¶ 50; Pl.'s Resp. to Answer ¶ 50; Decl. of Baher Al-Barqawi ¶ 8; 1/17/13 Al-Barqawi Dep. Trans. at 179: 13-21.

In September 2009, Al-Barqawi asked 7-Eleven if he could do a "BCP Conversion" of the Store. This would have required Al-Barqawi to purchase the property, store, and equipment in return for an increase of his share of the gross profits. Al-Barqawi was prepared to invest an additional

3

$100,000 for this purpose.  7-Eleven denied the request. 1/30/13 Al-Barqawi Dep. Trans. at 44:7-45:21.

On April 18, 2011, 7-Eleven terminated the franchise agreement with Al-Barqawi, purportedly due to his failure to meet 7-Eleven's minimum net worth requirement and because of cleanliness violations.  After the franchise agreement was terminated, Al-Barqawi learned from the former franchisee that the Store had previously encountered frequent criminal activity that was not disclosed to Al-Barqawi before he purchased the franchise.  Compl. ¶ 17, Exh. F; Decl. of Baher Al-Barqawi ¶ 15.

IV.  Discussion[2]

    A.  Standard of Review

A party is entitled to summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of

---

[2] This is a diversity action between the plaintiff, a citizen of New Jersey, and the defendant, a Texas corporation. The Franchise Agreement contains a choice of law provision that states that the agreement shall be governed and construed under the laws in which the store is located.  Al-Barqawi's franchise was located in Pennsylvania.  The parties do not discuss choice of law in their briefs, but both parties cite only to Pennsylvania law.  See Def.'s Mot. for Summary Judgment, Exh. C1, Franchise Agreement at 34.

demonstrating the basis of its motion.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden of production shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  In reviewing a motion for summary judgment, the court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion.  <u>Siegel Transfer, Inc. v. Carrier Express, Inc.</u>, 54 F.3d 1125, 1127 (3d Cir. 1995).

     B.   <u>Promissory Estoppel Claim</u>

The defendant argues that it is entitled to summary judgment on the plaintiff's claim for promissory estoppel (Count V) because a promissory estoppel claim "can only exist in the absence of a contract."  <u>Iversen Baking Co. v. Weston Foods, Ltd.</u>, 874 F. Supp. 96, 102 (E.D. Pa. 1995) (citing <u>Carlson v. Arnot-Ogden Mem. Hosp.</u>, 918 F.2d 411, 416 (3d Cir. 1990).  The plaintiff does not oppose summary judgment for the defendants on the promissory estoppel claim.  Oral Arg. Trans. at 3:25-4:2.

     C.   <u>Rescission Claim</u>

The defendant argues that it is entitled to summary judgment on the plaintiff's equitable rescission claim (Count I) because (1) the plaintiff must choose either the remedy of rescission or the remedy of damages, and (2) the plaintiff waived any claim for equitable rescission by failing to act promptly.

The Court finds that the rescission remedy is not available to the plaintiff because the plaintiff failed to act promptly on his potential claim for rescission.  Prompt action is a prerequisite to the remedy of rescission.  Schwartz v. Rockey, 932 A.2d 885, 894 (Pa. 2007) (citing Fichera v. Gording, 227 A.2d 642, 643-44 (Pa. 1967)).  The Pennsylvania Supreme Court explained that:

> When a party discovers facts which warrant rescission of his contract, it is his duty to act promptly, and, in case he elects to rescind, to notify the other party without delay, or within a reasonable time.  If possible, the rescission should be made while the parties can still be restored to their original positions.  Failure to rescind within a reasonable time is evidence, and may be conclusive evidence, of an election to affirm the contract.

Fichera, 227 A.2d at 643-44 (quoting 8 Pennsylvania Law Encyclopedia § 258 at 280-281).  The non-breaching party must act promptly to rescind a contract from the viewpoint of a reasonably prudent person.  Stafford Investments, LLC v. Vito,

375 F. App'x 221, 223-24 (3d Cir. 2010) (citing Siskin v. Cohen, 70 A.2d 293, 294-95 (Pa. 1950)).

District courts applying Pennsylvania law have also "uniformly held that when one party breaches a contract in such a manner that the other party would have the right to terminate the contract, the non-breaching party will lose that right if it continues to perform and accept performance of the contract after learning of the breach." Surgical Laser Technologies, Inc. v. Heraeus Lasersonics, Inc., 1995 WL 70535, at *2 (E.D. Pa. Feb. 15, 1995) (citing several cases applying that rule).

Here, the plaintiff failed to act promptly and continued performance of the contract long after learning of 7-Eleven's breach. Al-Barqawi's rescission claim is based on the defendant's alleged misrepresentation that the Store was safe and had no problems with crime. The plaintiff entered into the Franchise Agreement with 7-Eleven on August 22, 2008, relying on the defendant's misrepresentations. On the first day the plaintiff operated the Store as franchisee, former employees stole $50,000 of money orders. Two days later, the Store was robbed at gunpoint. A few days after that, a Philadelphia Police Officer informed the plaintiff that the Store had been robbed repeatedly and that the police were frequently called to

7

the Store.  Compl. ¶¶ 8, 10-11; Decl. of Baher Al-Barqawi ¶ 8; 1/17/13 Al-Barqawi Dep. Trans. at 179: 13-21.

The plaintiff was on notice during his first week as franchisee that the defendant may have misrepresented the safety of the Store.  Upon learning that the Store had problems with crime, the plaintiff had a duty to pursue his rescission claim within a reasonable time.  The plaintiff here waited over two years before pursuing a rescission claim against 7-Eleven.  By that time, the plaintiff had operated the store for a significant period of time.  The plaintiff had even requested a "BCP conversion," which would have required an additional investment on the part of the plaintiff in exchange for greater profits.  After operating and profiting from the Store for so long, it would be difficult to return both parties to their original positions.

At oral argument, the plaintiff argued that Al-Barqawi did act promptly to initiate his rescission action once he was informed by the former franchisee that the Store's prior criminal activity was not disclosed to Al-Barqawi.  The plaintiff argued that Al-Barqawi did not have a duty to pursue his rescission claim until he was told specifically that 7-

8

Eleven made misrepresentations to him regarding crime at the Store.  <u>See</u> Oral Arg. Trans. at 5:7-6:1.

The plaintiff was on notice long before then, however, of facts indicating that 7-Eleven may have misrepresented the history of crime at the Store.  Al-Barqawi knew enough within one week of operating the Store to conclude that 7-Eleven may have made misrepresentations to him.  Al-Barqawi did not act promptly on his rescission claim, but continued to perform on the contract for more than two years, and the parties cannot be restored to their pre-contract positions.

    C.    <u>Negligent and Intentional Misrepresentation</u>

The defendant argues that the plaintiff's claims for damages based on negligent and intentional misrepresentation (Counts II and III) are barred by the statute of limitations.  The argument is essentially the same as for the rescission claim.  These claims are also based on the allegations that the defendants misrepresented to Al-Barqawi and his wife that the Store was safe and had no problems with crime.  Al-Barqawi alleges that he relied on those misrepresentations when entering into the Franchise Agreement.

9

In Pennsylvania, the statute of limitations for fraud and negligent misrepresentation is two years. 42 Pa.C.S.A. § 5524(7). The statute of limitations begins to run as soon as the right to bring suit arises. Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983). The plaintiff has a duty to "use all reasonable diligence to inform himself or herself properly of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed statutory period." Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985) (citing Schaffer v. Larzelere, 189 A.2d 267, 269 (Pa. 1963)).

The plaintiff was injured by the defendant's alleged misrepresentations when he signed the franchise agreement on August 22, 2008. The plaintiff should have known of his injury during the first week that he operated the franchise, in October 2008. During October 2008, the plaintiff asserts that he was robbed at gunpoint and he was informed by police officers that crime occurred frequently at the store. At that time, Al-Barqawi should have been aware that 7-Eleven's statements regarding the safety of the store may have been misleading or fraudulent. The statute of limitations would have expired at

10

the latest, therefore, by November 2010. The plaintiff did not file his complaint until July 26, 2011.

The plaintiff argues, however, that the statute of limitations should be tolled under the doctrine of fraudulent concealment or equitable tolling. The statute of limitations is not tolled for mistake, misunderstanding, or lack of knowledge of the plaintiff. Ciccarelli, 757 F.2d at 556 (citing Schaffer, 189 A.2d at 269). "However, if through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry, the defendant is estopped from invoking the bar of limitation of action." Id. In order for equitable tolling to apply, the defendant must have acted affirmatively to induce the plaintiff to delay bringing suit. Id. (quoting Gravinese v. Johns-Manville Corp., 471 A.2d 1233, 1238 (Pa. Super. 1984)).

In this case, the plaintiff has not made any showing that the defendants attempted to cause the plaintiff to delay bringing this action. The plaintiff's equitable tolling argument appears to be based on a misapplication of the doctrine. The plaintiff argues that 7-Eleven is estopped from raising a statute of limitations defense because "7-Eleven deliberately took actions designed to mislead Al-Barqawi as to

11

conditions as the store." Pl.'s Supp. Resp. at 6. The fraud or concealment that the plaintiff argues entitles him to equitable tolling is 7-Eleven's concealment of the nature of criminal activity at the Store, and the former franchisee's statements about criminal activity at the Store. These statements were made before Al-Barqawi signed the franchise agreement. Although these may have been fraudulent statements, they are not statements that would have induced Al-Barqawi to delay bringing this action. The plaintiff has not asserted that, once he realized that the Store had problems with crime, the defendant attempted to deter the plaintiff from bringing his cause of action, through fraud or concealment. Rather, the plaintiff does not reference any statements or fraudulent conduct of the defendant after he signed the franchise agreement.

The plaintiff's argument that the statute of limitations did not begin to run until Al-Barqawi was informed by former franchisees that 7-Eleven made misrepresentations to him regarding crime at the Store is also unavailing. Al-Barqawi was aware of facts and circumstances by his first week as franchisee indicating that 7-Eleven may have made fraudulent statements to him. It was at that point, at the latest, that the statute of limitations began to run. The statute of

12

limitations expired in November 2010, and the plaintiff's negligent and intentional misrepresentation claims are time-barred.

      An appropriate order shall issue separately.